# WILLIAM HARMON
## V.
## CITY OF CHICAGO.

*Municipal Corporations—Licenses—Tug-men—Ordinance.*

In a controversy involving the right of the city of Chicago to require the taking out of licenses by tug-men, the members of this court taking different views of the case, the judgment for the defendant is affirmed, and the proper course suggested to bring the questions involved before the Supreme Court.

[Opinion filed June 30, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. SCHUYLER & KREMER, for appellant.

Mr. JONAS HUTCHINSON, for appellee.

GARY, P. J.   The facts on which the controversy here arises, are shown by a stipulation between the parties on which the case was tried in the Circuit Court, as follows:

" It is hereby stipulated and agreed that for the purpose of determining the right of the defendant to require of the plaintiff a license, and impose and collect a fine or license fee therefor, under the ordinance of the said defendant hereinafter set forth, the following are the ultimate facts under which the said license was required, and the fine or license fee imposed and collected, viz.:

That on the 26th day of September, 1888, the said plaintiff was the owner and manager of the following steam tugs, viz.: Tom Brown, F. S. Butler, J. H. Hackley, C. W. Parker, Bob Teed, A. B. Ward, W. H. Wolf, Crawford, C. B. McClellan, Mary McLane, Success and Wahbun; that said tugs and each of them were of twenty tons burden and upward, and were on the said date, and for a long time prior thereto had been, enrolled and licensed for the coasting trade, in pursuance of and under the provisions of " Title L " of the Revised Statutes of the United States, to which reference is hereby made, and which are made a part hereof; that prior to the date aforesaid, and on the 5th day of March, 1883, the common council of the said city of Chicago, acting under the power supposed to be vested in it by Chapter 24 of the Revised Statutes of the State of Illinois, and under which the said city was at said time incorporated, passed and enacted an ordinance regulating the navigation of steam tugs and other vessels on the Chicago river and Lake Michigan and the waters tributary thereto, requiring that the owner thereof take out a license therefor, and imposing upon him a fine or penalty for failing so to do, which said ordinance is in the words and figures following:

Be it ordained by the city council of the city of Chicago :

Sec. 1.   No persons or person shall keep, use or let for hire any tug or steam barge or tow boat for towing vessels or craft in the Chicago river, its branches or slips connecting therewith, or in and about the harbor of the city of Chicago, without first obtaining a license therefor in the manner and way hereinafter mentioned.

Sec. 2.   All applications for such license shall be made to the mayor, and upon the payment of twenty-five dollars ($25) to the city collector, a license shall be issued for the period of one year by the city clerk, for such tug, or steam barge or tow boat, and it shall be the duty of the city clerk to keep a register of the name of the person to whom such license is granted or transferred, the day when issued or transferred, the number of the license, and the name and description of the tug so licensed.

Sec. 3.   Every tug or steam barge or tow boat, shall have the number of the license and the name of the owner marked on both sides of such tug or steam barge or tow boat, in plain, legible figures and letters.

Sec. 4.   Any individual or person violating any provisions of this ordinance shall be subject to a fine of not less than five dollars ($5), nor more than fifty dollars ($50), for each offense.

Sec. 5.   This ordinance shall be in force from and after its passage.

That said steam tugs were enrolled and licensed in the manner and for the purposes aforesaid, by the United States authorities in and at the Northern District of Illinois, in which the said defendant, the said city of Chicago, is situated, and were, on the 26th day of September, 1888, and for a long time prior thereto had been, engaged in the coasting and foreign trade, and in commerce and navigation, namely, in towing vessels engaged in interstate commerce into and out of the Chicago river and harbor, from and to said Lake Michigan, and in pursuance of the conduct of the said trade, were navigating the said Chicago river and the waters of Lake Michigan and the tributaries thereto; which said river is, from time to time, deepened for navigation purposes by dredging, under the direction and at the expense of said city of Chicago.

That on the said day the said city collector of the said city of Chicago, the defendant herein, notified the said plaintiff to apply for and take out a license in pursuance of the requirements of the said ordinance, for each of the said steam tugs, and to pay therefor the sum of $25 for each of the said tugs, or the sum of $300 in the aggregate; that the said plaintiff thereupon notified the said collector that the said steam tugs and each of them were licensed for the coasting trade, in pursuance of and in accordance with the requirements of the laws of the said United States, and were engaged in said trade on the said Chicago river and said Lake Michigan and the waters tributary thereto in the manner as aforesaid, and thereupon claimed to the said collector, that the said ordinance was invalid and that the said city of Chicago had no power or authority to require the said plaintiff to take out a license in pursuance of the requirements of the said ordinance, or to pay the said fee of $25 for each of the said steam tugs, and thereupon refused to take out the said license or to pay the said fee; whereupon the said collector of the said defendant caused the said plaintiff to be arrested upon a warrant issued for that purpose, and while the said plaintiff was under arrest, he paid the said license fee, under protest, and took out the license as required by the said ordinance, and as demanded of him by the said collector, which said license was thereupon issued to him.

That the amount of the fee so as aforesaid paid to the said collector, for the said defendant, was the sum of $300; that the said sum was paid by the said collector into the treasury of the said defendant, the said city of Chicago, and that the questions which arise on the foregoing state of facts are as follows, viz.:

1st.   Whether or not the said defendant can require the plaintiff to take out the license and collect therefor the fees provided for in the ordinance aforesaid.

2d.   Whether there was vested in the defendant the power to require of the plaintiff the license and fee provided for in the ordinance aforesaid, and in the manner shown by the foregoing state of facts.

3d.   Whether the said ordinance, under which said license

was required and the said fee was imposed and collected, is legal and binding upon the plaintiff.

4th. Whether the plaintiff is not entitled to judgment for the amount of fees so paid by him as aforesaid.

It is hereby further stipulated, that the said facts may be presented to the court and tried under the pleadings, as they now stand, and that an order may be entered in said suit, submitting the same to the Honorable Richard S. Tuthill for trial, without the intervention of a jury, and that either party shall have the right to appeal from the decision and final judgment of the court herein, in the same manner and to the same extent as they would have if the said case had been tried in the usual and ordinary way.

Dated June 27, 1889.

SCHUYLER & KREMER,
Attorneys for Plaintiff.
JONAS HUTCHINSON,
Attorney for Defendant."

The boundaries of the city have, at least, since the charter of February 13, 1863, always included "so much of the waters and bed of Lake Michigan as lies within one mile of the shore thereof and east of the "land described in that charter."

The appellant contends that this ordinance of the city, recited in the stipulation, amounts, in its application to the facts in this case, to a regulation of commerce, and is contrary to the constitution and laws of the United States.

The "City and Villages" Act of 1872, Art. 5, Sec. 1, Part 35, confers upon the city council the power "to license, regulate and prohibit wharf boats, tugs and other boats used about the harbor, or within such jurisdiction."

By the statute conferring jurisdiction upon this court, cases involving the validity of a statute are excluded.

This court is now placed in the singular predicament, that although composed of three judges, no two of them can agree upon what ought to be done with this case. One of my colleagues thinks the judgment of the Circuit Court should be affirmed; the other, that it should be reversed. I think that it should be neither affirmed or reversed, but that the appeal

should be dismissed, upon the ground that the question of the validity of the ordinance involves the validity of the statute under the authority of which it was passed.

Neither of my colleagues agrees with me, both of them holding that the ordinance and the statute should be construed as being applicable only to subjects to which the authority of the State extends, and that such construction is within the jurisdiction of this court; and, further, they hold that the inquiry whether an ordinance is valid does not directly involve the validity of a statute, which is claimed as the authority for it.

In this condition of discordant opinion, I will in form agree to affirm the judgment of the Circuit Court, and the appellant can by appeal from or writ of error to this court, and a writ of error to the Circuit Court, prosecuted simultaneously, get the main question before the Supreme Court for decision.

*Judgment affirmed.*